UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES V. WARD, III,

        Plaintiff,

        Case No. 1:24-cv-364

v.

        Hon. Paul L. Maloney

CITY OF LANSING, et al.,

        Defendants.

_____/

## **REPORT AND RECOMMENDATION**

Now before the Court are Plaintiff's two Motions to Dismiss without Prejudice (ECF Nos. 70, 73); Defendants Church and Siemon's Motion to Dismiss or, in the alternative, for Summary Judgment (ECF No. 63); and Defendant Nichol's Motion to Dismiss or, in the alternative, for Summary Judgment (ECF No. 65). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motions be granted, Plaintiff's motions be denied, and this action be terminated.

### I. BACKGROUND

On April 8, 2024, Plaintiff initiated this action against eleven Defendants, asserting that his rights were violated in various ways following his arrest and incarceration in 2021. (ECF No. 1). Specifically, Plaintiff alleges the following in his complaint. (ECF No. 1).

On October 27, 2021, Plaintiff was arrested for larceny and assault. (ECF No. 1, PageID.3). On November 19, 2021, Defendant Nichol filed his appearance as

Plaintiff's appointed public defender.  (*Id*.).  Plaintiff asserted that Defendant Nichol was hired "pursuant to the contract" between Defendant Church, Defendant Siemon, and the city of Lansing.  (*Id*.).  Plaintiff was arraigned on March 2, 2022, for assault, larceny, and home invasion.  (*Id*.).  At his arraignment, Plaintiff spoke with Defendant Nichol about "getting a warrant" for non-party, Robert Lawson.  (*Id*.).  On April 8, 2022, Plaintiff was charged with home invasion and larceny.  (*Id*.).  Plaintiff was incarcerated until March 17, 2022.  (ECF No. 1, PageID.4).

Plaintiff failed to serve the complaint on Defendants Church and Siemon (ECF Nos. 8, 9) but served Defendant Nichol (ECF No. 11).  Eight Defendants moved to dismiss (ECF No. 14), and Plaintiff failed to file a response.  The Court entered an order directing Plaintiff to file a response.  (ECF No. 42).  Plaintiff failed to do so. Accordingly, the Court dismissed Plaintiff's claims against the eight Defendants, leaving Defendants Church, Siemon, and Nichol remaining.    (ECF  No. 52). Defendants Church and Siemon and Defendant Nichol now move to dismiss or, in the alternative, for summary judgment.  (ECF Nos. 63-66).  Plaintiff moved to dismiss without prejudice twice (ECF Nos. 70, 73),[1] and the remaining Defendants filed responses to each motion (ECF Nos. 71, 74).  The Court finds that oral argument is unnecessary.  *See* W.D. MICH. LCIVR 7.2(d).

---

[1] Plaintiff second Motion to Dismiss was titled "Motion to Di[s]miss & Answer Briefs." (ECF No. 73).  Given the evidence attached to Plaintiff's second motion to dismiss, the undersigned construes it as a response to the remaining Defendants' Motions to Dismiss or, in the alternative, for Summary Judgment.  The undersigned will refer to and address Plaintiff's second motion as a motion to dismiss and as a response.

Through their dispositive motions and attached evidence, Defendants attempt to clarify Plaintiff's claims and the circumstances of his underlying criminal case as follows. According to the police report on the incident, on October 27, 2021, Lansing police responded to a call from Lawson. (ECF No. 66-2, PageID.506). According to Lawson, he caught his neighbor, Plaintiff, in the process of stealing marijuana plants from his backyard. (*Id.*). Lawson told the police that Plaintiff waved a box cutter at him and threatened to cut Lawson. (*Id.*). Lawson also noticed that he was missing seven security cameras, two cordless drills, and two grow lights. (*Id.*). Lawson shared video footage from his cameras showing that Plaintiff was the last person on the property before the cameras were removed. (*Id.*).

The police also spoke to Plaintiff. (ECF No. 64-2, PageID.336). He claimed that he lived at Lawson's house and that he owned the house next door, which was red tagged. (*Id.*). Plaintiff explained that the items he took were his and that he never assaulted Lawson. (*Id.*). He refused to show the police officers the property he had taken. (*Id.*). The police then arrested Plaintiff for felonious assault and felony larceny. (ECF No. 64-2, PageID.337).

In November 21, 2021, according to his affidavit, Defendant Nichol of the Ingham County Public Defender's Office was appointed to defend Plaintiff in his criminal case. (ECF No. 64-3, PageID.340). Plaintiff's case was dismissed without prejudice after the Prosecutor's Office failed to subpoena Lawson, and Defendant Nichol argued that adjournment would be inappropriate since the prosecutor's office had months to subpoena him. (ECF No. 64-3, PageID.341). Plaintiff's charges were

reinstated on March 3, 2022.  (ECF No. 64-3, PageID.342).  Ten days later, Plaintiff was also charged with violating his bond conditions by threatening Lawson with a box cutter outside of a Dollar General.  (ECF No. 64-3, PageID.343).  One of the conditions of his bond was no contact with Lawson.  (*Id.*).

The district court convened the parties for a preliminary examination on April 8, 2022.  (ECF No. 64-3, PageID.346).  Lawson testified that his security cameras were taken, a large portion of his fence was removed, he saw Plaintiff in his backyard, his tools were gone, and Plaintiff stole his marijuana plants.  (*Id.*).  Lawson did not testify that Plaintiff threatened him with a box cutter.  (*Id.*).  Because of this, the prosecution moved to dismiss the count of felonious assault and instead replace with a count of home invasion in the third degree.  (*Id.*).  The district court accepted the new charge and bound Plaintiff over to circuit court on two counts: larceny in a building and home invasion in the third degree.  (*Id.*).  The district court also addressed Plaintiff's alleged violations of his bond conditions at the same hearing. (ECF No. 64-3, PageID.346-47).  Defendant Nichol argued that Plaintiff did not receive proper notice of his bond conditions.  (*Id.*).  The bond conditions were then dismissed, and the court required Plaintiff to wear a GPS tether instead of revoking his bond.  (ECF No. 64-3, PageID.347).

On January 29, 2024, Plaintiff accepted a plea deal.  (ECF No. 64-3, PageID.350).  Under the deal, the prosecution dropped two felony counts in exchange for a no-contest plea to the misdemeanor of entering without permission, which carried a penalty of ninety days in jail.  (*Id.*).  Plaintiff pled no-contest the next day,

and he was sentenced to thirty-six days in jail on May 6, 2024.  (*Id.*).  The submitted district court transcripts, bond violation report, and case note log mirror Defendant Nichol's affidavit.    (ECF  No. 64-3,  PageID.353-76,  378-464;  ECF  No.  64-5, PageID.466-69).

## II. PLAINTIFF'S MOTIONS TO DISMISS WITHOUT PREJUDICE

Under Federal Rule of Civil Procedure Rule 41(a)(2), a plaintiff needs a court order to dismiss his claims when his motions to dismiss are not signed by the other parties and were filed after the other parties moved for summary judgment.  *See* FED. R. CIV. P.  41(a)(1)-(2).  The purpose of the Rule is "to protect the nonmovant from unfair treatment." *Smith v. Holston Med. Group, P.C.*, 595 F. App'x 474, 476 (6th Cir. 2014) (citation modified).    Unfair  treatment  looks  more  like  "plain  legal prejudice" as opposed to "the mere prospect of a second lawsuit." *Grover by Grover v. Eli Lilly and Co.*, 33 F.3d 716, 718 (6th Cir. 1994).

> In determining whether a defendant will suffer plain legal prejudice, a court should consider such factors as the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant.

*Id.*  It is also unfair to grant a plaintiff's dismissal without prejudice "when the law clearly dictates a result for the defendant."  *Id.* at 719.

Here, these factors weigh against dismissal without prejudice.  This lawsuit began nearly two years ago, and, in their response, the remaining Defendants assert that their work on this case has cost taxpayers $28,484.96.  (ECF No. 74, PageID.673). Plaintiff also fails to provide a sufficient explanation for the need to dismiss.  He

requests dismissal because he wants to "file the complaint correctly" and "have all parties served," including Defendants Siemon, Church, and non-party Lawson. (ECF No. 70, PageID.646).  He explains that he failed to serve Defendants Church and Siemon because he did not know that they were not served until after he filed his "applications" for summary judgment on June 3, 2024.  But Plaintiff had more than a month to attempt service again since the deadline to do so was July 7, 2024—ninety days after he filed his complaint.

Additionally, Plaintiff does not explain why dismissal would be appropriate against Defendant Nichol, who has already been served and answered the complaint. He also does not explain why he failed to name Lawson as a party.  Plaintiff has never requested leave to amend his complaint to cure any defects or add any additional parties.  Each of these failures demonstrates Plaintiff's lack of diligence.  Moreover, Defendants have already filed motions for summary judgment in the alternative of their motions to dismiss.

## III. FAILURE TO STATE A CLAIM

### A. Legal Standard

Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 64, PageID.309; ECF No. 66, PageID.485).[2]  Under this standard, a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  As the Supreme Court has held, to avoid dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "  *Id.*  As the Court further observed:

---

[2] In Defendants Church and Siemon's motion to dismiss, they also argue that dismissal is appropriate for failure to effect service under Rule 4 of the Federal Rules of Civil Procedure.  (ECF No. 64, PageID.311-13).  Plaintiff acknowledges that Defendants Church and Siemon were not served.  (ECF No. 70, PageID.646) ("People not served [are] Robert Lawson, Russel [C]hurch, Carole A. Siemon.")).  When a plaintiff fails to serve within the first ninety days after a complaint under Rule 4(m), the Court has three different options, none of which clearly dictate an outcome in Defendants' favor here.  *See* FED. R. CIV. P. 4(m) (allowing a court to dismiss without prejudice, extend the deadline to serve, or order that service be made in a specific time).  Although the parties agree that Plaintiff failed to serve Defendants Church and Siemon, the undersigned declines to provide a remedy here under this rule because other defects in the lawsuit would clearly dictate an outcome in Defendants' favor.

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678-79 (quotation marks and citations omitted).

## B. Malicious Prosecution Claims

Plaintiff asserts malicious prosecution claims against Defendants generally under Section 1983.  (ECF No. 1, PageID.6).  Plaintiff merely states that Defendants "maliciously prosecute[d] [P]laintiff without any right or authority to do so."  (*Id.*). This conclusory allegation fails to assert sufficient facts comprising a viable claim on which relief may be granted against any of the remaining Defendants.  "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements' " of a claim, can provide context to the factual allegations, but are insufficient to state a claim for relief and must be disregarded.  *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555); *see also Lanman v. Hinson*, 529 F.3d 673, 685 (6th Cir. 2008) ("[D]amage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." (emphasis in original)).  Accordingly, these claims fail.

Further, Plaintiff cannot bring any Section 1983 claims against Defendant Nichol.  Section 1983 "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law."  *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004).  To state a Section 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law.  *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.  "It is firmly established that a public defender or a court-appointed defense counsel, while acting in that capacity, is not a state actor for purposes of § 1983."  *White v. Robertson-Deming*, 9 Fed. Appx. 418, 419-20 (6th Cir. 2001) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 321 (1981)).  Plaintiff alleges that a judge "duly appointed" Defendant Nichol "to represent [P]laintiff" in a criminal case.  (ECF No. 1, PageID.3).  Although public defenders may be state actors when "making hiring or firing decisions on behalf of the State" or "performing certain administrative and possibly investigative functions," Plaintiff fails to assert such allegations here.  *Polk Cnty.*, 454 U.S. at 324-25.  Accordingly, Plaintiff's malicious prosecution claim against Defendant Nichol fails for this reason, as well.

### IV. SUMMARY JUDGMENT

#### A. Legal Standard

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Whether a fact is "material" depends on

"whether its resolution might affect the outcome of the case." *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini, 440 F.3d at 357*. The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence," establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.  Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 993 F.3d at 474.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).  Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  Accordingly, summary judgment in favor of the party with the burden of proof "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### B. Legal Malpractice

To make a claim of legal malpractice in Michigan, Plaintiff bears the burden to show the following elements:

(1) the existence of an attorney-client relationship;

(2) negligence in the legal representation of the plaintiff;

(3) that the negligence was a proximate cause of an injury; and

(4) the fact and extent of the injury alleged.

*Simko v. Blake*, 532 N.W.2d 842, 846 (Mich. 1995).  To establish causation, a legal malpractice plaintiff must show that, but for the attorney's alleged malpractice, he

would have been successful in the underlying suit. *Charles Reinhart Co. v. Winiemko*, 444 Mich. 579, 586 (1994). "In other words, the client seeking recovery from his attorney is faced with the difficult task of proving two cases within a single proceeding." *Id.* A plaintiff "must prove professional negligence, i.e., that counsel failed to exercise reasonable skill, care, discretion, and judgment in the conduct and management of the underlying case." *Radtke v. Miller, Canfield, Paddock & Stone*, 453 Mich. 413, 424 (1996). "The plaintiff must also establish that, but for the negligence, the outcome of the case would have been favorable to the plaintiff." *Coleman v. Gurwin*, 443 Mich. 59, 63 (Mich. 1993).

When "an attorney acts in good faith and in honest belief that his acts and omissions are well founded in law and are in the best interest of his client, he is not answerable for mere errors in judgment." *Simko v. Blake*, 448 Mich. 648, 658 (1995); *see also Woods v. Gursten*, No. 194523, 1998 WL 1988581, at * 3 (Mich. App. Dec. 15, 1998) (holding that "legitimate areas of attorney judgment . . . may not be second-guessed"). This is sometimes referred to as the "attorney judgment rule." *See People v. Trakhtenberg*, 493 Mich. 38, 44-45 (2012).

### 1. Defendant Church

Plaintiff asserts that, in his underlying criminal case, Defendant Church failed to challenge the "lack of probable cause to hold [him]" and that he failed to file "a petition for habeas corpus" on his behalf. (ECF No. 1, PageID.6). As Defendant Nichol stated in his affidavit that he was Plaintiff's public defender in the underlying criminal case (ECF No. 64-3, PageID.340), Defendant Church denies having an

attorney-client relationship with Plaintiff in the same underlying case (ECF No. 64, PageID.320-21).  Plaintiff fails to provide evidence to the contrary.  Because Plaintiff fails to identify a genuine issue of material fact regarding the existence of an attorney-client relationship, his legal malpractice claim against Defendant Church fails.[3]

### 2. Defendant Nichol

In his complaint, Plaintiff's alleges that Defendant Nichol was appointed as his public defender and that Defendant Nichol "negligently, improperly and unskillfully did not challenge the lack of probable cause to hold Plaintiff and did not file a petition for habeas corpus at any time during Plaintiff's incarceration," which kept him incarcerated for longer than he otherwise would have been.  (ECF No. 1, PageID.6).  Plaintiff also asserts that he spoke with Defendant Nichol at his arraignment about "getting a warrant for Robert Lawson" and obtaining "[p]hone records, video, recordings, police reports, video, [and] exploratory evidence" but that "no further information was obtained" during Plaintiff's incarceration.  (ECF No. 1, PageID.3).

In support of his motion, Defendant Nichol provides his affidavit, Plaintiff's bond violation report, and the case log with his notes.  (ECF Nos. 66-3, 66-4, 66-5).

---

[3] Plaintiff also alleges that Defendant Nichol was employed by Defendant Church. (ECF No. 1, PageID.3).  To the extent that Plaintiff asserts legal malpractice under a vicarious liability theory, this claim also fails.  Defendant Nichol stated in his affidavit that he was employed by Ingham County's Office of the Public Defender— not Church.  (ECF No. 64-3, PageID.340).  Plaintiff does not cite any evidence in the record to contest this fact, and, as a result, he cannot bring a claim against Defendant Church on a theory of vicarious liability either.

Defendant Nichol testified that he sought and obtained all video in the prosecution's possession regarding the October 27, 2021 incident, along with all video regarding alleged bond condition violations.  (ECF No. 66-3, PageID.512).  He further testified that, on March 18, 2022, at Plaintiff's preliminary examination, he argued against the Court's revocation of bond and requested that the Court should continue bond pending hearing on the matter, asserting that there were inconsistencies between the statement from Lawson and the Dollar General video footage.  (ECF No. 66-3, PageID.343-44).  Defendant Nichol testified that the court agreed that there may be inconsistencies but was concerned with the alleged threat and revoked Plaintiff's bond pending trial.  (ECF No. 66-3, PageID.344).  Defendant Nichol's notes in his case log reflect his testimony.  (ECF No. 66-3, PageID.541).

Defendant Nichol asserts that Plaintiff's claim arising from his alleged failure to object to a lack of probable cause to hold him fails under the attorney judgment rule and because Plaintiff cannot establish causation.  The Court agrees.  Notably, probable cause is not the applicable standard to revoke bond.  MCR 6.106(I)(2) provides that the Court may, if the defendant has failed to comply with the conditions of release, issue a warrant for the arrest of the defendant and "enter an order revoking the release order and declaring the bail money deposited or the surety bond, if any, forfeited."  The Court's revocation of Plaintiff's bond pending trial was within its discretion—not for Defendant's lack of advocacy—and was based upon allegations that Plaintiff violated the bond's no-contact terms (ECF No. 66-5, PageID.637-40; ECF No. 66-4, PageID.631-34).  In response, Plaintiff fails to provide evidence

14

sufficient to establish a genuine issue of material fact as to whether Defendant Nichol exercised reasonable judgment by not objecting and as to whether the court would not have revoked his bond had Defendant Nichol objected. Accordingly, Plaintiff is unable to bring this malpractice claim against Defendant Nichol.

Plaintiff's legal malpractice claim arising from his assertion that Defendant Nichol failed to file a writ of habeas corpus on his behalf also fails. "It is well settled that habeas corpus is a civil proceeding." *Browder v. Dir., Dept. of Corrections of Illinois*, 434 U.S. 257, 269 (1978) (collecting cases). Defendant Nichol was assigned to represent Plaintiff in his criminal proceeding (ECF No. 73-2, PageID.663), and Defendant Nichol explained multiple times that he did not represent Plaintiff in any civil capacity. (ECF No. 66-3, PageID.517-20). In response, Plaintiff does not present any evidence demonstrating a genuine issue of fact as to whether Defendant Nichol owed him a duty with respect to his civil claims. Accordingly, Plaintiff is unable to bring a malpractice claim against Defendant Nichol for his failure to file a writ of habeas corpus on his behalf.

### III. CONCLUSION

For the reasons cited herein, the undersigned judicial officer recommends that the Court deny Plaintiff's Motions to Dismiss (ECF Nos. 63, 65) and grant Defendants' Motions to Dismiss or, in the alternative, for Summary Judgment (ECF Nos. 70, 73). The undersigned further recommends, for the same reasons, that an appeal of this matter by Plaintiff would not be in good faith. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

Objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.    28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated: March 2, 2026                              /s/ Phillip J. Green
                                                  PHILLIP J. GREEN
                                                  United States Magistrate Judge